# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY CONWAY, #N83890, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-0393-SMY ) |
| JOHN BALDWIN, WEXFORD HEALTH SERVICE, INC., PAUL LEWIS SHICKER, CHRISTINE BROWN, MICHAEL SCOTT, TINA NEFF, MS ELDERS, JACQUELINE LASHBROOK, and MS WILLIAM, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Gregory Conway, who is currently incarcerated in Lawrence Correctional Center ("Lawrence"), brings this action pursuant to 42 U.S.C. § 1983. According to the Complaint, Plaintiff suffered from and sought treatment for abdominal pain for an extended period of time during his incarceration in Pinckneyville Correctional Center ("Pinckneyville"). He maintains that the defendants were deliberately indifferent to his medical needs related thereto, in violation of the Eighth Amendment. (Doc. 1). Plaintiff seeks monetary damages and injunctive relief mandating his transfer to Dixon or Centralia Correctional Center. (Doc. 1, p. 24). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; certain claims in this action are subject to summary dismissal.

## **The Complaint**

According to the Complaint, on May 21, 2015, Plaintiff began having stomach and chest pains. (Doc. 1, p. 8). Nearly a year later, on May 6, 2016, Plaintiff went to Pinckneyville's Health Care Unit and was examined by Nurse Practitioner Angel Rector. *Id.* On June 6, 2016, Plaintiff was diagnosed with Helicobacter Pylori infection, which Rector explained is contracted

from exposure to feces. (Doc. 1, pp. 8-9). Plaintiff was given the four different medications used to treat Helicobacter Pylori infections, and he took them as prescribed. (Doc. 1, p. 9).

After 7 days of taking the medicine, Plaintiff began having severe stomach pains. *Id.* He sent a request slip to health care and saw a medical technician on July 10, 2016 who told him that he was scheduled to see the doctor. (Doc. 1, p. 10). On July 14, 2016, Plaintiff received a call pass to see Dr. Scott to be tested for the infection and to be prescribed something for the pain that he was experiencing because of the medication. *Id.* Upon entering the examination room, Dr. Scott asked Plaintiff what he wanted from the visit and told him he was aware that the Attorney General's office had received a copy of Plaintiff's medical records because he had filed a lawsuit. *Id.* He then told Plaintiff, in stronger words, that he was "sick and tired" of prisoner's filing lawsuits and that he did not care about Plaintiff or his lawsuits. (Doc. 1, p. 11). He then demanded that Plaintiff leave the examination room and when Plaintiff asked him why, Dr. Scott loudly told Plaintiff to get out. *Id.* As Plaintiff was leaving, Dr. Scott screamed that he "was going to give [Plaintiff] some medication" but that now he was "not giving [him] shit." *Id.* Plaintiff claims these actions by Dr. Scott constituted retaliation in violation of the First Amendment in response to the lawsuits filed by Plaintiff and deliberate indifference to Plaintiff's medical needs. (Doc. 1, p. 12).

Plaintiff further alleges that on October 14, 2016, he was suffering from severe stomach pains that resulted in diarrhea and vomiting. *Id.* He submitted a request to health care that day and saw Medical Technician Neff on October 16, 2016. *Id.* Neff gave Plaintiff a Pepto tablet to treat his symptoms, but the symptoms continued. (Doc. 1, p. 12-13). On October 17, 2016, Plaintiff sent requests to health care explaining that he was suffering from stomach pains, diarrhea and vomiting. (Doc. 1, p. 13). The next day, he was called to sick call by Medical

Technician Ms. Elder. *Id.* He informed Elder of his Helicobacter Pylori infection diagnosis in June 2016 and told her about his current stomach pain, diarrhea and vomiting symptoms. *Id.* Elder told Plaintiff to drink water and further stated that they would not give him anything for stomach pains. *Id.* Plaintiff claims that these actions by Elder constitute deliberate indifference to his medical needs and cruel and unusual punishment. (Doc. 1, pp. 13-14).

On October 19, 2016, Plaintiff saw Medical Technician Ms. William and informed her of his previous infection. (Doc. 1, p. 14). He explained his symptoms to her including vomiting, stomach pains and diarrhea after eating on October 14, 2016. (Doc. 1, pp. 14-15). He asked her for medication for his pain, but William told him that she was under instructions from her superiors not to give any medication to inmates complaining about stomach pains from the food. (Doc. 1, p. 15). Plaintiff claims that these actions by Elder constitute deliberate indifference to his medical needs. *Id.*

Plaintiff also alleges that Wexford Health Sources, Inc., the Director of the Illinois Department of Corrections ("IDOC") John Baldwin, the IDOC Medical Director Lewis Shicker, Pinckneyville Warden Jacqueline Lashbrook and Pinckneyville Healthcare Administrator Christine Brown have a policy "insinuating" to Neff, Elder and William that they should utilize the most cost effective medical treatment possible and provide as little medical treatment as possible for the inmates. (Doc. 1, p. 16). Plaintiff further claims that this policy caused him to suffer, as evidenced by the allegations in the Complaint. *Id.* He alleges that Baldwin is on notice of how Wexford's staff performs it duties because of the civil complaints that have been filed against it. (Doc. 1, pp. 16-17). Plaintiff also alleges that Wexford has "continuously ignored this unauthorized practice by defendant which resulted in Plaintiff being subjected to unnecessary pain and suffering." *Id.* Plaintiff claims that the failure of Shicker and Wexford to

respond to the systemic health and safety problems preventing Plaintiff and other inmates from receiving appropriate care was the moving force behind the constitutional deprivations suffered by Plaintiff. (Doc. 1, pp. 17-18). Plaintiff also asserts that Wexford is the final policy maker of healthcare provisions being implemented throughout IDOC by its employees and that Shicker and Brown are responsible for carrying out these policies. (Doc. 1, p. 18). Finally, Plaintiff alleges that Lashbrook denied his grievance, stating that it was "not an emergency for the Plaintiff to receive medical attention after complaining for 6 months." (Doc. 1, p. 19).

Plaintiff demands monetary damages as well as permanent injunctive relief ordering that Plaintiff to be sent to an outside doctor to be retested for Helicobacter Pylori infection, that IDOC and Wexford follow the recommendations in the 2014 report from *Lippert v. Godinez*, and that Plaintiff to be transferred to Dixon or Centralia Correctional Center. (Doc. 1, p. 24).

## **Discussion**

The Court finds it proper to divide the claims in the *pro se* Complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

> **COUNT 1:** Scott violated Plaintiff's Eighth Amendment rights by failing to test him for the Helicobacter Pylori infection and by failing to provide him medication to treat pain related to his Helicobacter Pylori infection on July 14, 2016.
>
> **COUNT 2:** Scott retaliated against Plaintiff in violation of the First Amendment by refusing to give Plaintiff medication to treat his pain and failing to test him for Helicobacter Pylori infection on July 14, 2016 because Plaintiff had previously filed lawsuits related to his incarceration.
>
> **COUNT 3:** Neff**,** William, and Elder violated Plaintiff's Eighth Amendment rights by failing to provide him adequate medication to treat his stomach problems in October 2016.
>
> **COUNT 4:** Wexford, Baldwin, Shicker, Lashbrook, and Brown maintained a policy, custom, and/or practice of elevating concerns regarding the cost of inmate

5

> care over the quality of care in order to minimize its costs in violation of Plaintiff's Eighth Amendment rights.

**COUNT 5:** Lashbrook and Baldwin violated Plaintiff's Eighth Amendment rights by failing to ensure Plaintiff was receiving proper medical care when the inadequate medical treatment provided to Plaintiff and/or other inmates was brought to their attention.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Count 1 – Deliberate Indifference of Scott

The Eighth Amendment bars the cruel and unusual punishment of prisoners, and prison officials violate this proscription "when they display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). To bring an Eighth Amendment claim against a defendant, a prisoner must clear two hurdles. First, he must allege facts sufficient to show that his medical condition is "objectively" serious, and second, he must appropriately allege that the defendant acted with the requisite state of mind of deliberate indifference. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Plaintiff's complaints of recurring abdominal pain qualifies as serious, at least at this preliminary stage. *Miller v. Campanella*, 794 F.3d 878 (7th Cir. 2015) (delay in providing Zantac for

inmate's gastroesophageal reflux disease, resulting in persistent pain, was a "dereliction of medical duty"); *Greeno v. Litscher*, 13 F. App'x 370, 375 (7th Cir. 2001) (severe prolonged stomach pain, vomiting blood, and constipation from excessive use of antacids considered a serious medical need); *Gutierrez*, 111 F.3d at 1373 (serious medical condition can include chronic pain).

As to the second prong, "medical malpractice, negligence, or even gross negligence" by a physician "does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Additionally, deliberate indifference does not arise merely because a physician's treatments prove ineffective. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Nor does a constitutional violation occur when a doctor refuses to give a prisoner the exact treatment he prefers. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That said, deliberate indifference can exist if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Deliberate indifference may also exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), persists with an ineffective course of treatment, *Greeno*, 414 F.3d at 655, delays treatment, or needlessly prolongs a prisoner's pain. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

Here, when the Complaint allegations are construed liberally and all inferences are drawn in Plaintiff's favor, Plaintiff's claims that Defendant Scott refused to provide him with a follow-up test for his Helicobacter Pylori infection and failed to provide him medication for the pain he

was experiencing as a result of the medication for the infection state a claim for deliberate indifference against Scott at this juncture. Count 1 will therefore proceed against Scott.

### Count 2 – Retaliation

In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future and must allege that the protected activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim – the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

Plaintiff claims that on July 14, 2016, Scott failed to test him for the Helicobacter Pylori infection and refused to provide him with medicine for his stomach pain because of the lawsuits Plaintiff had previously filed that related to his incarceration. These allegations describe an adverse action taken in response to Plaintiff having engaged in the protected First Amendment activity of filing a lawsuit…a response that certainly could deter him from engaging in the protected activity. Thus, Count 2 will be allowed to proceed against Scott.

### Count 3 – Deliberate Indifference of Neff, William and Elder

Although medical providers that are subordinate to physicians, such as nurses, "may generally defer to instructions given by physicians, they have an independent duty to ensure that

inmates receive constitutionally adequate care." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). When confronted with a questionable practice or clearly inappropriate treatment, a nurse or other lower level medical provider has a professional obligation to "take appropriate action" by discussing his or her concerns with the treating physician or contacting a supervisor. *Id.* Eighth Amendment claims against nurses and other medical subordinates are still subject to the standard articulated in *Twombly*, however, and adequate factual content must be pled to sustain a claim against them.

Plaintiff's allegations that Defendants William and Elder refused to provide him with medication for the stomach pain he was experiencing, potentially as a result of his Helicobacter Pylori infection that they were aware of, articulate a colorable claim for deliberate indifference to Plaintiff's medical needs against these defendants. Therefore, Count 3 will proceed against William and Elder.

However, Plaintiff has failed to set forth any facts or allegations as to how Defendant Neff may have been deliberately indifferent to his medical needs. He merely asserts that he saw Neff for his stomach problems, that she gave him Pepto to treat these problems and that his symptoms persisted. He does not claim Neff was aware that the symptoms persisted or were ongoing or that she intentionally provided him with medication that would be ineffective. As such, Plaintiff has not adequately stated a claim against Neff and she will be dismissed form the case without prejudice.

### Count 4 – Detrimental Medical Care Policy

With respect to Plaintiff's claims against Wexford, a corporate entity will incur liability in a civil rights action only where it established a policy that directly caused the constitutional violation. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)

9

(corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Generally, choosing a treatment for a prisoner based on cost and not efficacy may be evidence of deliberate indifference. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). However, bald allegations of deficient treatment caused by an effort "to cut medical costs . . . does not plausibly suggest the existence of such a policy." *Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012).

Here, Plaintiff attempts to support his claim that such a policy exists and was detrimental to his care by alleging that, in furtherance of the policy, Defendants Wexford, Shicker, Brown, Lashbrook and Baldwin "insinuated" to those responsible for Plaintiff's care that they should minimize costs. *See Brown v. Ghosh*, No. 09-cv-02542, 2010 WL 3893939, at *9 (N.D. Ill. Sept. 28, 2010) ("[T]he allegation that Wexford Health pressures medical care providers to deny medical care is specific enough to alert defendant to the policy he alleges infringes on his constitution right.") (citing *McDonald v. Wexford Health Sources*, No. 09-cv-4196, 2010 WL 3034529, at *3 (N.D. Ill. Jul. 30, 2010) (denying Wexford Health's motion to dismiss where the plaintiff alleged a similar policy)). He narrows the field of those potentially responsible for this policy by alleging that Wexford created it and that Shicker and Brown implement it. (Doc. 1, p. 18).

Significantly, Plaintiff's claims in Count 4 are duplicative of his claims in Count 2 in *Conway v. Brummel*, Case No. 17-cv-0110-MJR ("prior action"), which was filed in this district prior to the instant action. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (one cause of action is duplicative of another if the "claims, parties, and available relief do not significantly differ between the two actions."). The claims associated with Count 4 in the instant action are nearly identical to the claims associated with Count 2 of the Amended Complaint filed

in the prior action on March 31, 2017. *Compare* (Doc. 1) *with* 17-cv-0110-MJR at Doc. 8. Plaintiff named Wexford, Shicker and Brown as defendants in conjunction with both counts and alleged the same conduct regarding the implementation of a cost-cutting over efficacy of medical care policy created by Wexford and implemented by Shicker and Brown. *Compare* (Doc. 1) *with* 17-cv-0110-MJR at Doc. 8. The only substantive difference between the allegations in the two cases is Plaintiff's attempt to include Lashbrook and Baldwin as defendants in the instant action. This attempt fails, however, as Plaintiff's claims that would connect them with the allegedly unconstitutional policy are vague and conclusory and do not cross the line between possibility and probability. Moreover, Plaintiff specifically alleges that Wexford, Shicker and Brown (not Lashbrook or Baldwin) are directly responsible for the creation and implementation of the policy.

Because Plaintiff's claim asserted in Count 4 is duplicative of his claim in the prior action against Wexford, Shicker and Brown (*Conway v. Brummel*, Case No. 17-cv-0110-MJR), and because Plaintiff has failed to provide any facts that would implicate Baldwin and Lashbrook, Count 4 will be dismissed without prejudice.[1]

### Count 5 – Grievance Official Liability

Plaintiff also alleges that Lashbrook violated his Eighth Amendment rights when she rejected his emergency grievance concerning his treatment. He claims that Baldwin has also "been placed on notice by account of previous civil complaints filed against Wexford Health Sources Inc. about how its staff is underperforming its duties." (Doc. 1, pp. 16-17). The denial of a grievance or the rejection of a letter by a prison official, standing alone, is generally not

---

[1] *See Serlin*, 3 F.3d at 223 ("As a general rule, a federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court.") (quotation and citations omitted).

11

enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). However, a prison official may be liable if an inmate tells the official of an ongoing medical problem that is not being treated and the official does nothing. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).

Plaintiff attached to his Complaint a highly detailed grievance that he sent to Lashbrook regarding his treatment by Scott. (Doc. 1-1, pp. 26-27). There is no indication in the Complaint that Lashbrook inquired into the appropriateness of Plaintiff's treatment. Instead, it appears that Lashbrook rejected Plaintiff's grievance on August 8, 2016, finding that his situation was not an emergency. *Id.* Based on these allegations and facts, Plaintiff's claims in Count 5 against Lashbrook shall proceed at this early stage. Conversely, Plaintiff's claims against Baldwin will be dismissed without prejudice. His allegation that Baldwin was "on notice" regarding Wexford underperforming its duties is too speculative and vague to state a viable claim.

## **Pending Motions**

Plaintiff's Motion to Consolidate Filing Fees (Doc. 7) is **DENIED**. Plaintiff was granted leave to proceed *in forma pauperis* in this and several other cases filed in this Court, and was ordered to pay 20% of his monthly income towards the filing fee in each case. He now asks the Court to either eliminate his obligation to pay the remaining fees or "consolidate" them into a single monthly payment of 20%. A prisoner is required to pay the entire filing fee for any civil case he brings. *See* 28 U.S.C. § 1915(b)(1). The Seventh Circuit instructs that "the fees for filing the complaint and appeal cumulate. Otherwise a prisoner could file multiple suits for the

price of one . . . ." *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), and *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). A prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid; a prisoner who files a suit and an appeal must remit 40%; and so on. *Newlin*, 123 F.3d at 436. "Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid." *Id.* The current arrangement where 100% of Plaintiff's account balance must be deducted to make payments toward the fees in his cases will remain unchanged, until the balance owed for one or more of the cases is paid in full.

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) which is **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** shall **PROCEED** against **SCOTT**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **WILLIAM** and **ELDER**. **COUNT 3** shall be **DISMISSED** without prejudice against **NEFF** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 4** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted with respect to **LASHBROOK** and **BALDWIN** and for being duplicative of claims against **WEXFORD**, **SHICKER**, and **BROWN** currently being litigated in this District in *Conway v. Brummel*, Case No. 17-cv-0110-MJR.

**IT IS FURTHER ORDERED** that **COUNT 5** shall **PROCEED** against **LASHBROOK**. **COUNT 5** will be **DISMISSED** without prejudice as against **BALDWIN**, however, for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants **BALDWIN, WEXFORD**, **SHICKER**, **BROWN**, and **NEFF** shall be **DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that as to **COUNTS 1**, **2**, **3** and **5**, the Clerk of Court shall prepare for **SCOTT**, **WILLIAM**, **ELDER**, and **LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  6/12/2017**

**s/STACI M. YANDLE**

**U.S. District Judge**